Shauck, J.
Thefirst section of the act of March 20,1884 (section 8805, 1, Revised Statutes), provides “that no person shall within this state manufacture for sale, offer for sale, or sell any drug or article of food which is adulterated, within the meaning of this act.” Other provisions of the statute are devoted to definition of the terms used in the first section, and to prescribing penalties for the violation of the act. It is not doubted that molasses to which glucose has been added is an *178 article of adulterated food ■ within the meaning of the statute.
The act does not in terms require, to constitute an offense against its provisions, that the adulterated article of food-shall be sold to be used by the purchaser as human food. Nor does it in terms require, as an element of the offense, knowledge of the fact that the article is adulterated, or provide that a 'want of such knowledge, shall constitute a defense. Both conclusions stated in. the decision of the court of common pleas, are, therefore, wrong unless they are justifiable inferences from the purpose and indicated policy of the act.
The act is not a provision for the punishment of those who sell adulterated food, or drugs, because of any supposed turpitude prompting such sales or indicated by them. Its purpose is indicated by its title. It is “an act to provide against the adulteration of food and drugs.” It is a plan devised by the general assembly to protect the public against the hurtful consequences of the sales of adulterated food and drugs, those consequences being in no degree increased by the vendor’s knowledge, or diminished by his ignorance, .of the adulteration of the articles which he offers for sale. The provisions of the act are appropriate to the purpose indicated by its title. It would have been inconsistent with that purpose to provide for the trial of such immaterial issues as the object of the vendor in making a sale or of the extent of his knowledge touching the quality of the article sold. Those who produce the adulterated articles whose sale is forbidden may live without the state. Purpose and knowledge, except when they are indicated by the character of the forbidden act, are, in most cases, insusceptible of proof. *179 If this statute had imposed upon the state the burden of proving the purpose of the vendor in selling an article of food or his knowledge of its adulteration, it would thereby have defeated its declared purpose. Since it is the duty of courts to so construe doubtful statutes as to give effect to the purpose of the legislature, they cannot in case of a statute whose provisions are unambiguous and whose validity is clear, defeat its purpose by construction.
The correct view of statutes of this general nature is stated by the supreme court of Massachusetts in Commonwealth v. Murphy, 42 N. E. R., .504: “Considering the nature of the offense, the purpose to be accomplished, the practical methods available for the enforcement of the law, and such other matters as throw light upon the meaning of the language, the question in interpreting a criminal statute is whether the intention of the legislature was to make knowledge of the facts an essential element of the offense, or to put upon everyone the burden of finding out whether his contemplated act is prohibited, and of refraining from it if it is. ’ ’
In Commonwealth v. Farren, 9 Allen, 489, in construing a statute which provides that “whoever sells or keeps or offers for sale adulterated milk, or milk to which water or any foreign substance has been added” shall be punished as provided, it was held that it is not necessary either to allege or prove that the accused knew that the milk he offered for sale was adulterated. With respect to a similar statute the same conclusion was reached in State v. Smith, 10 R. I., 258. If knowledge of the adulteration were an element of the offense, it would be incumbent upon the state to establish it; *180 but since it is not, the 'defendant could derive no advantage from any evidence tending to show the absence of such knowledge.
With respect to the absence of the allegation that the adulterated article of food “was sold to be used as human food,” it is sufficient that the statute forbids the sale of such article without any requirement as to the purpose, assuming that it is to be used for that purpose to which it is appropriate. Goodrich v. People, 3 Parker, Crim. R., 622; Davis v. The State, 32 Ohio St., 24.
In the enactment of this statute it was the evident purpose of the general assembly to protect • the public against the harmful consequences of the sales of adulterated food and drugs, and, to the end that its purpose might not be defeated, to 'require the seller at his peril to know that the article which he offers for sale is not adulterated, or to demand of those from whom he purchases indemnity against the penalties that may be imposed upon him because of their concealment of the adulteration of the articles.

Exceptions sustained.